UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
FRANCISCO DILONE TAVERA,

     Plaintiff,       **MEMORANDUM AND ORDER**

    -against-         **21-CV-5020 (ST)**

COMMISSIONER OF SOCIAL SECURITY,

     Defendant.
----------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

   Francisco Dilone Tavera ("Plaintiff") brings this action against the Social Security

Administration Commissioner ("Defendant" or "Commissioner") under the Social Security Act

(the "Act") to challenge the Commissioner's determination that Plaintiff is not disabled. *See* 42

U.S.C. § 405(g). Before the Court are the Parties' motions for judgment on the pleadings under

Rule 12(c) of the Federal Rules of Civil Procedure.[1] For the reasons discussed below, Plaintiff's

motion is GRANTED in-part, the Commissioner's cross-motion is DENIED, and the case is

REMANDED for further proceedings consistent with this Memorandum and Order.

**BACKGROUND**

   The Court takes the following facts from the Administrative Record ("Tr."), and the

Parties' Joint Stipulation of Facts ("JSF"). *See* Admin. Tr., ECF No. 16; Joint Stipulation, ECF

No. 25. The Court presumes the Parties' familiarity with the record, and thus recounts only those

facts necessary to resolve the instant cross-motions.

---

[1] "Social security appeals are generally resolved on motions for judgment on the pleadings. This is because judicial review of social security decisions is limited to 'the pleadings and transcript of the record.'" *Taylor v. Comm'r of Soc. Sec.*, 711 F. Supp. 3d 148, 153 (E.D.N.Y. 2024) (citing 42 U.S.C. § 405(g); *Kercado ex rel. J.T. v. Astrue*, 8-cv-478 (GWG), 2008 WL 5093381, at *2 (S.D.N.Y. Dec. 3, 2008)).

## I.    PLAINTIFF'S BACKGROUND

Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on January 24, 2019.[2]  Plaintiff alleges that he became disabled on May 17, 2018 (the "alleged onset date" or "AOD"),[3] due to cervical and lumbar radiculopathy, diabetes and diabetic neuropathy, high blood pressure, and "analgesics."[4]  Tr. 18, 53–54, 61–62, 69–70, 82–83, 250, 258.  Plaintiff, who was 55 years old at the time of the AOD, previously worked as a parking lot attendant and kitchen helper.  Tr. 53, 59, 61, 67, 69, 79–80, 82, 92–93, 336; JSF § I. A. 1.  He received a third-grade education in the Dominican Republic and speaks Spanish, but not English. Tr. 26, 39; JSF § I. A. 4.

## II.    MEDICAL EVIDENCE

Since 2015, Plaintiff has had a documented history of spinal degeneration and disc disease. On November 3, 2015, Plaintiff went to the emergency room at Mather Hospital for lower back pain that radiated down the side of his leg.  Tr. 383–88; *see* JSF § I. B. 6.  Plaintiff received an X-ray, which showed mild degenerative changes in his lumbar spine.  Tr. 386; JSF § I. B. 6.  On April 2, 2016, an MRI of Plaintiff's lumbar spine showed posterior annular disc bulges at L3-L4 and L4-L5, a broad posterior subligamentous disc herniation at L5-S1, facet hypertrophic changes at L4-L5 and L5-S1, and straightening of lumbar lordosis.  Tr. 520–21; JSF § I. B. 7.  On

---

[2] The state agency determinations for DIB and SSI, at both the initial level and reconsideration level, as well as the ALJ's decision, indicate that Plaintiff applied for benefits on January 24, 2019.  Tr. 18, 53, 61, 69, 82.  However, the record indicates that Plaintiff scheduled an appointment on January 24, 2019, for February 15, 2019, at which appointment Plaintiff completed the applications for DIB and SSI.  Tr. 202, 211–23.  It is unclear whether the date on which the appointment was scheduled constitutes the "application date" for these purposes, but the Parties do not challenge the ALJ's finding in this respect, and the discrepancy does not affect the Court's analysis.

[3] Plaintiff's application for SSI states an AOD of April 17, 2018, but the paperwork completed during the SSA field office interview indicates an AOD of May 17, 2018.  Tr. 215, 235, 238.  This discrepancy is not mentioned in the state agency determinations nor by the ALJ.  Tr. 18, 21, 61–62, 82–83.

[4] As indicated by Food and Drug Administration regulations, an analgesic is "[a]n agent used to alleviate pain."  21 C.F.R. § 343.3.  The state agency determinations and the ALJ's decision do not address this alleged impairment, presumably because it is a medication, not an impairment.

September 30, 2017, an MRI of Plaintiff's lumbar spine revealed dextroconvexity and L5/S1 posterior central subligamentous disc herniation that impressed the thecal sac. Tr. 522; JSF § I. B. 7.

### A.    Dr. Rodriguez-Ospina

On July 28, 2017, Plaintiff saw Dr. Jose Rodriguez-Ospina at Suffolk Primary Health for complaints of chronic pain. Tr. 40, 401–03; JSF § I. B. 8. Plaintiff reported no side effects from pain medication, and an ability to perform daily activities. Tr. 401; JSF § I. B. 8. Review of systems was negative. Tr. 402–03; JSF § I B. 8. Plaintiff continued to see Dr. Rodriguez-Ospina monthly for back pain medication, with essentially unchanged back pain complaints, through May 2018. Tr. 40, 405–51; JSF § I. A. 3.; I. B. 8. During these appointments, Plaintiff reported being able to work as a porter at Stony Brook University. Tr. 405, 409, 413, 417, 422, 427, 437, 447, 452; JSF § I. B. 8. Examinations showed limited movement, tenderness, and spasm in Plaintiff's lower back, with positive straight leg raises at 60 degrees, but normal neurologic examination and psychiatric findings. Tr. 403, 407–08, 411–12, 415–16, 419–20, 424–25, 429–30, 434–35, 440, 444–45, 449–50; JSF § I. B. 8.

During his appointment with Dr. Rodriguez-Ospina on May 18, 2018, Plaintiff complained of chronic pain, hypertension, other transient cerebral ischemic attacks and related syndrome, occlusion and stenosis of the right carotid artery, type 2 diabetes with diabetic peripheral angiopath without gangrene, cervicalgia, and radiculopathy in the lumbar region. Tr. 452–57; JSF § I. C. 9. However, Plaintiff reported that he was "[a]ble to work" with no side effects from the medication or mood changes. Tr. 452; JSF § I. C. 9. A review of systems was negative. Tr. 454–55; JSF § I. C. 9. Examination revealed gradual pain development, limitation of movement, tenderness, spasm at the mid, lower lumbar region of the back, and positive bilateral straight leg raise at 60 degrees

3

in the supine position that produced back and leg pain.  Tr. 455; JSF § I. C. 9.  Neurologic examination showed full (5/5) motor strength in all extremities, bilaterally equal deep tendon reflexes of +2/4, and no focal neurological deficit.  *Id.*  Psychiatric findings were unremarkable, showing a normal affect with no delusions, hallucinations, or psychomotor slowing or agitation. Tr. 456; JSF § I. C. 9.

Plaintiff saw Dr. Rodriguez-Ospina in July 2018, and then monthly through June 2019.  Tr. 458–519; JSF § I. C. 11.  In July and August 2018, the examination was unchanged.  Tr. 461, 465–66; JSF § I. C. 11.  In September, Plaintiff was in no acute distress with normal range of motion in all joints and normal muscle strength in all muscle groups.  Tr. 472; JSF § I. C. 11.  Plaintiff had no spinal or costovertebral angle ("CVA") tenderness and continued to show an appropriate affect with no delusions, hallucinations, or psychomotor slowing or agitation.  Tr. 472; JSF § I. C. 11.  In October, as with prior examinations, Plaintiff had limitation of movement, tenderness, and spasm in his back, with positive straight leg raises at 60 degrees, with no neurological deficits.  Tr. 477; JSF § I. C. 11.  On October 24, 2018, an x-ray of Plaintiff's left foot suggested mild hallux valgus deformity, and showed spurring at the gastrocnemius insertion.  Tr. 526; JSF § I. C. 10.  In November, examination showed tenderness with limited range of motion in Plaintiff's neck.  Tr. 482; JSF § I. C. 11.  Plaintiff continued to appear in no acute distress with normal neurological findings and unremarkable psychiatric findings.  Tr. 482–83; JSF § I. C. 11.

On January 21, 2019, Dr. Rodriguez-Ospina reported that Plaintiff had been under his care for the last five years for cervical and lumbar radiculopathy, diabetes, and diabetic neuropathy. Tr. 350; JSF § I. C. 12.  At the time, Plaintiff was taking analgesics and multiple medications for diabetes and high blood pressure.  *Id.*  Dr. Rodriguez-Ospina opined that Plaintiff was totally medically disabled due to his cervical and lumbar radiculopathy, diabetes, and diabetic neuropathy,

4

and was thus unable to perform any type of gainful employment in the American economy.  Tr. 350; JSF § I. B. 25.  However, Dr. Rodriguez-Ospina did not opine on any specific functional limitations.  *Id.*

Dr. Rodriguez-Ospina's examinations through May 2019 revealed unchanged findings of positive straight leg raises and tenderness and limitation of movement in the neck and back, with no neurological deficits and unremarkable psychiatric findings.  Tr. 487, 492, 497–98, 503–04, 508, 513–14; JSF § I. C. 13.  In June 2019, Plaintiff was in no acute distress, and Dr. Rodriguez-Ospina recorded unremarkable examination findings, including normal neck inspection, no spinal or CVA tenderness, normal strength in all muscle groups, normal range of motion of all joints, normal deep tendon reflexes, and unremarkable psychiatric findings.  Tr. 518; JSF § I. C. 13.

Though Plaintiff reported back pain in June 2019, review of his systems was consistently negative, and the doctor recommended that Plaintiff continue his medications.  Tr. 459–62, 464–67, 470–73, 476–78, 481–83, 486–88, 491–93, 496–98, 502–04, 507–09, 512–14, 517–18; JSF § I. C. 11.  Dr. Rodriguez-Ospina also consistently recommended that Plaintiff walk regularly for exercise.  Tr. 478, 483, 488, 493, 498, 504, 509, 514; JSF § I. C.  11.

In July 2019, Plaintiff reported that his pain had improved from a 9 to a 6 out of 10 while on the pain medication, and that he could perform daily living activities.  Tr. 547; JSF § I. C. 14.  Review of systems was again negative.  Tr. 548–49; JSF § I. C. 14.  Plaintiff was in no acute distress on examination with tenderness and limited range of motion in the neck and limitation of movement, tenderness, spasm, and weakness in the low back.  Tr. 549–50; JSF § I. C. 14.  Plaintiff showed positive straight leg raises at 60 degrees, with no neurological deficits and unremarkable psychiatric findings.  *Id.*  Dr. Rodriguez-Ospina recommended that Plaintiff continue his pain

5

medications.  Tr. 550; JSF § I. C. 14.  For diabetes and high blood pressure, the doctor also continued to recommend that Plaintiff walk regularly for exercise.  *Id.*

Plaintiff continued seeing Dr. Rodriguez-Ospina for monthly appointments through December 2019.  Tr. 547–56, 594–612; JSF § I. C. 14.  Review of systems continued to be negative, and examinations were unchanged.  Tr. 553–55, 595–97, 600–02, 605–07, 609–11; JSF § I. C. 14.  On December 16, 2019, Plaintiff presented for a follow up examination.  Tr. 608–12; JSF § I. C. 21.  Examination revealed that Plaintiff's BMI was 34.1.  Tr. 610; JSF § I. C. 21.  Plaintiff was in no acute distress.  *Id.*  His neck was tender to palpation and had limited range of motion in all planes.  *Id.*  Plaintiff's lower lumbar region had limitation of movement, tenderness, spasm, and weakness.  Tr. 611; JSF § I. C. 21.  Plaintiff had positive bilateral straight leg raise at 60 degrees that produced back and leg pain.  *Id.*

On August 21, 2020, Dr. Rodriguez-Ospina opined that Plaintiff could lift/carry up to 10 pounds occasionally (up to a third of the time), stand or walk up to one hour total in an eight-hour workday, and sit up to one hour total in an eight-hour workday.  Tr. 695–96; JSF § I. B. 30.  Dr. Rodriguez-Ospina further opined that Plaintiff could never climb, bend, balance, stoop, crouch, kneel, crawl, or push/pull.  Tr. 696; JSF § I. B. 30.  The doctor also opined that Plaintiff could reach occasionally (up to a third of the time) and feel/handle constantly (two thirds or more of the time).  *Id.*

**B.    Consultative Examiner Andrea Pollack**

On April 5, 2019, Plaintiff underwent an orthopedic examination with consultative examiner ("CE") Andrea Pollack, D.O., at the behest of the State agency.  Tr. 354–58; JSF § I. C. 15.  Plaintiff complained of high blood pressure for over three years, diabetes diagnosed over three years prior, bilateral knee pain for five years, neck and back pain for two to three years, and

6

possibly a transient ischemic attack in the past.  Tr. 354; JSF § I. C. 15.  Plaintiff also reported 8 to 9 out of 10 pain, for which he had undergone physical therapy and pain injections, but no surgery.  *Id.*

Dr. Pollack reported that the exam findings appeared exaggerated and inconsistent, reporting that Plaintiff was seen numerous times walking to the exam room in a less impaired way than how he presented on examination.  *Id.*  Physical examination revealed no acute distress.  Tr. 355; JSF § I. C. 16, 17.  During the exam, Plaintiff walked with an inconsistent limp.  *Id.*  He was unable to walk on his heels and toes and declined to squat.  *Id.*  His stance was normal, he needed no help changing for the examination or getting on and off the examination table, and was able to rise from a chair without difficulty.  *Id.*  In the examination room, a prescribed cane appeared to be necessary; however, when Plaintiff was observed in the hallway, the cane did not appear to be medically necessary.  *Id.*  Strength was 4/5 in the proximal and distal muscles of Plaintiff's extremities.  Tr. 355–56; JSF § I. C. 17.  In Plaintiff's cervical spine, lateral flexion was 15 degrees and rotary movement was 30 degrees bilaterally.  Tr. 355; JSF § I. C. 17.  He had tenderness of the paracervical and cervical spine.  Tr. 355; JSF § I. C. 17.  He had full (5/5) grip strength, full range of motion in his shoulders and arms, no muscle atrophy, normal reflexes, and 20/70 vision using both eyes with correction. Tr. 355–56; JSF § I. C. 17.

CE Pollack opined that Plaintiff had marked restrictions in bending, lifting, carrying, pushing, and pulling.  Tr. 356; JSF § I. B. 26.  CE Pollack also opined that Plaintiff had moderate to marked restrictions in walking, standing, climbing stairs, and kneeling.  *Id.*  CE Pollack further opined that Plaintiff should avoid heights and was restricted in activities that required visual acuity of the left eye and fine visual acuity of the right eye.  *Id.*  CE Pollack concluded her Medical Source

Statement as follows: "I would suggest comparison to medical records to rule out exaggerated. exam findings by [Plaintiff]." *Id.*

### C.    Consultative Examiner Clementina Porcelli

On July 24, 2019, Plaintiff underwent a psychiatric evaluation with CE Clementina Porcelli, Ph.D., at the behest of the State agency. Tr. 538–41; JSF § I. C. 19.  Plaintiff complained of difficulty falling asleep, loss of appetite, dysphoric moods, psychomotor retardation, fatigue, loss of energy, excessive apprehension, worry, restlessness, and some short-term memory deficits and concentration difficulties. Tr. 538; JSF § I. C. 19.  He denied phobic responses, trauma, panic attacks, manic symptoms, thought disorder, and other symptoms. *Id.*  Plaintiff denied any psychiatric history and said he "saw a therapist only once." *Id.*  He reported that he could dress, bathe, groom himself, prepare simple meals, shop for simple purchases, manage his own money, drive short distances, take public transportation "if absolutely necessary," do light general cleaning and some laundry. Tr. 539–40; JSF § I. C. 19.

Plaintiff was cooperative.  Tr. 539; JSF § I. C. 20.  His manner of relating, social skills, and overall presentation were fair.  *Id.*  Mental status examination revealed appropriate eye contact, coherent and goal-directed thought process, appropriate affect, clear sensorium, and full orientation.  *Id.*  His attention, concentration, and remote and recent memory skills were intact.  *Id.*

CE Porcelli opined on Plaintiff's mental ability to perform basic work activities as follows:

> (a) Plaintiff had "no limitations" and/or could perform "without limitation" in the following areas:
>
> > i. understanding, remembering, or applying simple directions and instructions;
> > ii. using reason and judgment to make work-related decisions;
> > iii. sustaining an ordinary routine;
> > iv. sustaining regular attendance at work;
> > v. maintaining personal hygiene;
> > vi. maintaining appropriate attire;

vii. being aware of normal hazards; and
viii. taking appropriate precautions; and

(b) There "may be mild limitation" in the following areas:

i. understanding, remembering, or applying complex directions and instructions;
ii. interacting adequately with supervisors, coworkers, and the public;
iii. sustaining concentration;
iv. performing a task at a consistent pace;
v. regulating emotion;
vii. controlling behavior; and
viii. maintaining wellbeing.

Tr. 540; JSF § I. B. 28. Dr. Porcelli concluded: "Results of the examination appear to be consistent with psychiatric problems but not appear to be significant enough to interfere with [Plaintiff's] ability to function on a daily basis." *Id.*

### D.    State Agency Physicians

On May 15, 2019, State agency physician S. Putcha, M.D., reviewed the record and generated a PAMF determining that Plaintiff could perform a full range of light exertional work, including standing and walking up to six hours total in an eight-hour workday. Tr. 57–58, 65–66; JSF § I. B. 27. On September 10, 2019, State agency physician J. Randall, M.D., reviewed the record and generated a PAMF determining that Plaintiff could perform a range of light exertional work, including standing and walking up to six hours total in an eight-hour workday. Tr. 76–79, 89–92; JSF § I. B. 29. Dr. Randall also concluded that Plaintiff could occasionally stoop, kneel, crouch, crawl, and climb; had limited near and far visual acuity; and should avoid concentrated exposure to hazards such as machinery and heights. Tr. 77–79, 90–92; JSF § I. B. 29.

### E.    T. Inman-Dundon

On August 21, 2019, reviewing physician for the Department of Disability Evaluations, Dr. T. Inman-Dundon, opined that Plaintiff's depression caused "not severe," "mild" limitations

to concentrate, persist, or maintain pace, but no other limitations. Tr. 75, 88. Dr. Inman-Dundon stated in his notes that Plaintiff has never been hospitalized psychiatrically and has only ever seen a therapist once. *Id.*

### F. Other Medical Information

On February 10, 2020, Plaintiff went to the emergency room for low back pain that he rated 6 out of 10 and described as radiating to his legs for the previous two days. Tr. 650–79; JSF § I. C. 22. He also mentioned having chest pain "on and off for a while" with no shortness of breath. Tr. 654; JSF § I. C. 22. He was in no acute distress on examination, with full range of motion in his neck, intact range of motion in his back (with moderate pain), tenderness in his paraspinal muscles, full range of motion in his arms and legs, full (5/5) motor strength, normal sensation, and a calm mood. Tr. 663; JSF § I. C. 22. Plaintiff was prescribed medication and discharged from the emergency room the same day he arrived. Tr. 664; JSF § I. C. 22.

On March 7, 2020, Plaintiff went to the emergency room following three days of moderate abdominal pain. Tr. 624, 631–40; JSF § I. C. 23. He denied all other symptoms, including neck pain, back pain, sensory deficits, and weakness, but he did report chronic low back pain. Tr. 632–33, 635; JSF § I. C. 23. He was in no acute distress, with full range of motion in his neck, no CVA tenderness, normal range of motion in his arms and legs without pain or tenderness, full (5/5) muscle strength, normal sensation, and a calm mood with cooperative behavior. Tr. 635; JSF § I. C. 23. A CT scan showed epiploic addendagitis. *Id.* Plaintiff was discharged from the emergency room on the same day, with a prescription for 600 mg of ibuprofen. *Id.* During a follow-up call with a nurse on March 12, Plaintiff said he was "feeling better" and that his insurance did not cover the emergency room's referral. Tr. 627; JSF § I. C. 24. The nurse encouraged Plaintiff to call his insurance company, and he denied any questions or concerns. *Id.*

###### G.    The Function Report

In a function report dated March 21, 2019 (the "Function Report"), Plaintiff reported that he spent his days being helped out of bed, sitting on the couch, lying down at times, and then being helped back into bed at bedtime. Tr. 274. Plaintiff said that he did no house or yard work, was unable to dress himself due to pain, and received help from his partner with scrubbing in the shower. Tr. 275–76; JSF § I. A. 2.

### III.    ADMINISTRATIVE HISTORY

Plaintiff applied for DIB and SSI on January 24, 2019. Tr. 51–53, 61, 95–96. The SSA denied Plaintiff's applications initially on May 21, 2019, and upon reconsideration on September 10, 2019. Tr. 98, 114, 126. Plaintiff requested a hearing, which took place before ALJ Brian J. Crawley ("the ALJ") on June 10, 2020, via telephone (the "Hearing"). Tr. 34–50, 138; JSF § I. A. 3. Plaintiff appeared and testified in Spanish through an interpreter. JSF § I. A. 3; *see* Tr. 34–47.

At the hearing, Plaintiff testified that that he could not work because of poor eyesight and constant back pain. Tr. 36–47; JSF § I. A. 3. He testified that the pain medication helped "a little," with no side effects, but that he could not sleep without it. Tr. 40–41; JSF § I. A. 3. Plaintiff said that he used heat patches on his back but never had physical therapy. Tr. 45; JSF § I. A. 3. He estimated that he could stand for at most five minutes before needing to sit down, and could sit for about ten minutes before needing to stand up. Tr. 43–44; JSF § I. A. 3. He testified that he had a cane that he "sometimes" had to use when standing up. Tr. 45; JSF § I. A. 3. He said that he spent his days mostly at home but could not even watch television because he "can't see." Tr. 43; JSF § I. A. 4. For hobbies or pastimes, he testified that he spent time with his three-year-old and six-year-old grandchildren, whom he would watch when their parents were unavailable, up to an hour

at a time once or twice a week.  Tr. 44; JSF § I. A. 4.  He also said that he last went to the hospital for back pain about five months earlier in January 2020.  Tr. 46; JSF § I. A. 3.

A vocational expert, Susan Gaudet, also testified at the Hearing, classifying Plaintiff's past work as a parking lot attendant (light exertional work as generally performed and as actually performed by Plaintiff) and kitchen helper (medium exertional work as generally performed and light exertional work as actually performed by Plaintiff).  Tr. 47; JSF § I. A. 5.  Ms. Gaudet also testified that a hypothetical individual who could perform a full range of light work could perform Plaintiff's past work as a parking lot attendant and kitchen helper as actually performed.  Tr. 47–48; JSF § I. A. 5.

On December 23, 2020, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled within the Act's meaning.  Tr. 12–33.  Plaintiff requested Appeals Council review on January 14, 2021.  Tr. 198–201.  On July 8, 2021, the Appeals Council denied Plaintiff's request, rendering the ALJ's decision the Commissioner's final decision.  Tr. 1–8.

## IV.    PROCEDURAL HISTORY

Plaintiff filed his complaint in this Court on September 8, 2021.  *See* Compl., ECF No. 1.  On May 30, 2023, the Parties consented to this Court's jurisdiction under 28 U.S.C. § 636(c).  *See* Consent, ECF No. 21.  On November 29, 2023, the Parties filed their Joint Stipulation of Facts.  *See generally* JSF.  On November 30, 2023, Plaintiff filed his motion for judgment on the pleadings, and Defendant responded and filed their cross-motion for judgment on the pleadings.  *See* Pl.'s Mot. J. Pleadings, ECF No. 26; Pl.'s Mem. Law Supp., ECF No. 27; Def.'s Cross Mot. J. Pleadings, ECF No. 28; Mem. Law Opp'n, ECF No. 29.

## LEGAL STANDARD

At the outset, the Court notes that this case involves both DIB and SSI benefits.  For present purposes, the regulatory standards for DIB determinations and SSI provisions are essentially the same.  *Canter v. Saul*, 19-cv-00157, 2020 WL 887451, at *1 n.2 (D. Conn. Feb. 24, 2020) ("The regulations for disability and disability insurance and supplemental security income benefits are virtually identical.  The DIB regulations are found at 20 C.F.R. § 404.900, *et seq.*, while the parallel SSI regulations are found at 20 C.F.R. § 416.901, *et seq.*").  For simplicity, in the absence of a material difference, the Court will not always cite to both sets of regulations.  *See Coulter v. Comm'r of Soc. Sec.*, 673 F. Supp. 3d 365, 371 (S.D.N.Y. 2023).

## I.     JUDICIAL REVIEW OF COMMISSIONER'S FINAL DECISION

The Act permits judicial review of the Commissioner's final decision.  *See* 42 U.S.C. § 405(g).  If the Commissioner denies benefits, the claimant may seek judicial review of that decision by commencing a civil action in a federal court.  *Id.* (governing judicial review of DIB decisions); *see* 1383(c)(3) (incorporating Section 405(g) as to SSI); *Coughlin v. O'Malley*, 21-cv-2252 (KAM), 2024 WL 833246, at *4 (E.D.N.Y. Feb. 28, 2024).   Under the Act, the Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing."  *Id.*  Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard."  *Rosa v. Callahan*, 168 F.3d 72, 82–83 (2d Cir. 1999) (citations and quotations omitted).

Judicial review of the Commissioner's final decision involves two steps: first, the Court must decide whether the Commissioner applied the correct legal standard in making the

determination; second, the Court must decide whether substantial evidence supports the determination. *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999).

To determine whether the Commissioner applied the correct legal standard, the Court must "be satisfied that the claimant has had a full hearing under the regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (cleaned up). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted).

As for the substantial evidence standard, it is "not high," *Rucker v. Kijakazi*, 48 F.4th 86, 91 (2d Cir. 2022) (citing *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022)), but is "more than a mere scintilla." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* "In determining whether substantial evidence exists, a reviewing court must consider the whole record, examining the evidence from both sides . . . ." *Longbardi v. Astrue*, 7-cv-5952 (LAP), 2009 WL 50140, at *21 (S.D.N.Y. Jan. 7, 2009) (citations omitted).

As the substantial evidence standard is "very deferential," *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam), the Court should not "start from scratch" in reviewing the ALJ's decision. *Johnson v. Saul*, 19-cv-1222 (SALM), 2020 WL 6562402, at *2 (D. Conn. Nov. 9, 2020). It "is the function of the Commissioner, and not a reviewing court, to pass upon the credibility of witnesses, and to set forth clearly its findings which form the basis for its decision." *Armstead v. Chater*, 892 F. Supp. 69, 74 (E.D.N.Y. 1995). The Court's task is "limited to determining whether substantial evidence exists to support the ALJ's fact-finding; it

14

may not reweigh that evidence or substitute its judgment for that of the ALJ where the evidence is susceptible of more than one interpretation." *Rivera v. Comm'r of Soc. Sec.*, 368 F. Supp. 3d 626, 642 (S.D.N.Y. 2019); *see Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("[T]his Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." (citations omitted)). "[O]nce an ALJ finds facts, [the court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Brault*, 683 F.3d at 448 (emphasis in original) (quotation marks omitted).

## II.    ENTITLEMENT TO BENEFITS

Under the Act, a claimant is disabled, and thus entitled to benefits, if he cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step process to evaluate an alleged disability. *See* 20 C.F.R. §§ 404.1520, 416.920.[5] The Second Circuit has described the process as follows:

> **First**, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner [**second**] considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the **third** inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him [per se] disabled . . . Assuming the claimant does not have a listed impairment, the **fourth** inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. [**Fifth**], if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

---

[5] The provisions of the Social Security Act governing DIB and SSI use the same standards to determine disability. *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Thus, cases addressing disability as to one form of benefits are equally instructive as to the other. *Santoro v. Comm'r of Soc. Sec.*, 703 F.Supp.3d 376, 384 n.5 (E.D.N.Y. Nov. 27, 2023).

*Talavera*, 697 F.3d at 151 (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1179–80 (2d Cir. 1998) (emphasis added)).  At the first four steps, the claimant bears the burden of proof, which then shifts to the Commissioner, at the fifth step, to demonstrate that there are jobs in the national economy that the claimant can perform.  *Id.*; *Zacharopoulos v. Saul*, 516 F.Supp.3d 211, 219 (E.D.N.Y. 2021).

## DISCUSSION

Following the above-described sequential evaluation process, the ALJ here concluded that Plaintiff had "not been under a disability, as defined in the . . . Act, from May 17, 2018, through the day of this decision."  Tr. 28.  Plaintiff's challenges on appeal relate to the ALJ's determination at step two, as well as his determination of Plaintiff's residual functional capacity ("RFC").  Specifically, Plaintiff argues that: (1) the ALJ erred by failing to properly evaluate medical opinion evidence when assessing Plaintiff's mental RFC; (2) the ALJ erred, at step two of the sequential evaluation process, in failing to evaluate Plaintiff's mental impairment as severe; and (3) the ALJ failed to properly consider the necessity of Plaintiff's use of a cane.  The Court addresses these arguments in turn.

## I.     THE ALJ INSUFFICIENTLY CONSIDERED PLAINTIFF'S MENTAL IMPAIRMENT IN DETERMINING PLAINTIFF'S RFC.

Plaintiff argues that the ALJ erred "by failing to properly evaluate the medical opinion when determining the Plaintiff's mental RFC assessment."  Pl.'s Mem. Law at 10.  The RFC is the most a person can still do despite limitations resulting from their impairments.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  "An RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear."  *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (citing 20 C.F.R. § 404.1527(d)(2)).

When assessing the RFC for a claimant with mental impairments, the ALJ will "first assess the nature and extent" of the claimant's "mental limitations and restrictions," and then determine the claimant's RFC "for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(c). The ALJ must assess a claimant's RFC "based on all the relevance evidence" in the record, 20 C.F.R. § 404.1545(a)(1), including "objective medical evidence, opinions of examining or treating physicians, subjective evidence submitted by the claimant, as well as the claimant's background, such as age, education, or work history." *Buonsignore v. Comm'r of Soc. Sec.*, 20-cv-4582 (MKB), 2022 WL 4121378, at *4 (E.D.N.Y. Sept. 9, 2022) (citations omitted). In assessing a claimant's RFC, an ALJ must consider all of the claimant's medically determinable impairments, including those that are not "severe." 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). The RFC assessment must be based on "all of the relevant medical and other evidence" in the case record, including "any statements about what [the claimant] can still do that have been provided by medical sources, whether or not they are based on formal medical examinations." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see Carter v. Colvin*, 13-cv-4631 (KAM), 2016 WL 3360559, at *14 (E.D.N.Y. June 9, 2016).

According to Plaintiff, the ALJ specifically failed to:

> include or incorporate all the assessed limitations or restrictions cited by Dr. Porcelli's RFC determination, including limitations for interacting with supervisors, coworkers, and the public and sustaining concentration and performing a task at a consistent pace . . . [and] did not set forth any findings with regards to Plaintiff's mental limitations despite finding Plaintiff had mild for two of functional areas in 'Criteria B' including limitation for understanding, remembering, or applying information, concentration, persisting or maintaining pace.

Pl.'s Mem. Law at 11–12. In other words, Plaintiff argues that, while the ALJ *did* consider plaintiff's mental functioning in the four areas of limitation while assessing the severity of plaintiff's conditions at step two, the ALJ was required to consider both plaintiff's severe and non-

severe impairments in assessing plaintiff's RFC, and that the ALJ erred by failing to discuss these limitations.  The Court agrees.

At step two of the sequential evaluation process, the ALJ determined the severity of Plaintiff's impairments, including Plaintiff's mental impairment of depression.  Tr. 22.  As required at step two, the ALJ considered the four "broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments," known as the "paragraph B criteria."  *Id.*  The ALJ agreed with Dr. Porcelli's finding that Plaintiff had mild limitations in two of the four functional areas, writing:

> The next functional area is interacting with others. In this area, **the claimant has mild limitation**.  The claimant lives with his daughters. He appears to have good family relationships. There is no evidence of social isolation, social withdrawal or intense and unstable interpersonal relationships. Dr. Porcelli described his social skills and manner of relating as fair. She conclude [*sic*] **he may have some mild limitations interacting adequately with supervisors, coworkers and the public** (Exhibit 8F).

> The third functional area is concentrating, persisting or maintaining pace. In this area, **the claimant has mild limitation**. Dr. Porcelli noted the claimant's attention and concentration skills were intact. She concluded **he may have some mild limitations sustain concentration, persistence and pace** (Exhibit 8F).

Tr. 22–23 (emphasis added).  Then, the ALJ recited Dr. Porcelli's opinion that Plaintiff may have "mild limitation with regard to interacting adequately with supervisors, coworkers and the public and with sustaining concentration and performing a task at a consistent pace" as well as "regulating emotion, controlling behavior and maintaining well-being."  *Id.* at 23.  The ALJ also recited Dr. Porcelli's conclusion that the results of Plaintiff's examination, although consistent with psychiatric problems, do "not appear to be significant enough to interfere with the claimant's ability to function on a daily basis."  *Id.*  After evaluating and considering Dr. Porcelli's, as well as Dr. Inman-Dundon's, opinions, the ALJ found that because Plaintiff's depression "causes no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise

18

indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it is nonsevere." *Id.*

There is no question that, at step two of the sequential evaluation process, the ALJ considered—and indeed, adopted—Dr. Porcelli's findings regarding Plaintiff's limitations. However, "[t]he analyses of impairments when determining severity at step two and when later formulating the claimant's RFC *are related but distinct*." *Coulter*, 673 F.Supp.3d at 375 (emphasis added). "Finding an impairment to be non-severe is not the end of the ALJ's obligation to consider the impairment." *Id.* "When formulating a claimant's RFC, the ALJ must 'consider' not only her severe impairments, but her non-severe impairments as well." *Novas v. Kijakazi*, 22-cv-1020 (MKV) (BCM), 2023 WL 2614362, at *11 (S.D.N.Y. Mar. 8, 2023), *report and recommendation adopted*, 2023 WL 2613550 (S.D.N.Y. Mar. 23, 2023) (citing 20 C.F.R. § 404.1545(a)(2)). "Accordingly, an ALJ's assessment at step two does not relieve them of the requirement to discuss Plaintiff's mental health impairments in formulating the RFC." *Coulter*, 673 F.Supp.3d at 376 (citations and quotations omitted); *see Novas*, 2023 WL 2614362, at *12 ("The requirement that the ALJ 'consider' a plaintiff's non-severe mental impairments in formulating her RFC cannot be discharged by the paragraph B analysis used at step two to rate the severity of those impairments." (citations omitted)).

Here, the ALJ recognized this principle. While evaluating step two, the ALJ stated that the "limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a *more detailed assessment*." Tr. 23 (emphasis added). Despite this acknowledgment, the ALJ did not address Plaintiff's depression in the RFC analysis.

19

*See* Tr. 24–27. When the ALJ later determined Plaintiff's RFC, the ALJ did not mention Plaintiff's depression or any limitations therefrom. While the ALJ stated, back at step two, that the "following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis," Tr. 23, such a conclusory statement is insufficient, as the RFC requires a higher degree of detail than the assessment conducted at step two, and the sentence inserted into the step 2 analysis does little more than attempt to import the step two analysis into the RFC determination by reference.

As such, the ALJ's conclusory statement, without more, is insufficient to show that the ALJ accounted for Plaintiff's depression in the RFC determination. *See Coulter*, 673 F. Supp. 3d at 378 ("such a conclusory statement does not suffice where the RFC analysis is lacking."); *see id.* at 378–79 (collecting cases holding that similar, perfunctory statements, amounted to mere "lip service," rather than adequate assessments of impairments for purposes of an RFC).[6]

To be sure, the ALJ's RFC analysis focused on Plaintiff's *physical* impairments. Tr. 24–27. In determining whether Plaintiff had medically determinable impairments that could be expected to produce Plaintiff's pain or other symptoms, the ALJ discussed evidence related to Plaintiff's lower back and neck pain, obesity, and diabetes—but not related to Plaintiff's depression. Tr. 25. In analyzing the intensity, persistence, and limiting effects of Plaintiff's symptoms, the ALJ discussed evidence related to Plaintiff's back and neck pain, eyesight, and diabetes—but no evidence related to Plaintiff's depression symptoms. Tr. 25–27. Discussion of Plaintiff's depression was absent from the analysis.

---

[6] Moreover, while an "ALJ may find that Plaintiff's mental impairments are inconsequential and, thus, reject the need to incorporate mental limitations into the RFC . . . he must explain his reasoning for doing so." *Laura Anne H. v. Saul*, 20-cv-397 (TWD), 2021 WL 4440345, at *11 (N.D.N.Y. Sept. 28, 2021). The ALJ did not do that here.

Accordingly, with respect to Plaintiff's mental impairments, the ALJ "failed to engage in the type of more detailed assessment that an ALJ is required in reaching an RFC determination." *Garcia v. Comm'r of Soc. Sec.*, 21-cv-1230 (SDA), 2022 WL 4234555, at *14 (S.D.N.Y. Sept. 14, 2022). Remand is warranted where, as here, the ALJ does not account for a claimant's mental impairment in the RFC analysis. *Amparo v. Comm'r of Soc. Sec.*, 20-cv-10285 (JMF) (SDA), 2022 WL 3084482, at *10 (S.D.N.Y. July 19, 2022), *report and recommendation adopted*, 2022 WL 3084380 (S.D.N.Y. Aug. 3, 2022); *see Coulter*, 673 F.Supp.3d at 377 (collecting cases remanding where ALJ failed to include in the RFC analysis the limitations found at step two). "Although an ALJ's failure to mention non-severe impairments in formulating the RFC may be considered harmless error absent evidence that these impairments contributed to any functional limitations . . . that is not the case, where, as here, the ALJ found at least mild limitations in areas of mental functioning." *Amparo*, 2022 WL 3084482, at *11 (citations and quotations omitted). Because the ALJ failed to consider limitations from non-severe impairments, as identified at step two, the ALJ did not properly formulate Plaintiff's RFC. As such, the Court remands so that the ALJ can adequately consider, and make detailed findings regarding, Plaintiff's mental impairments in determining the RFC. *See id.*; *Novas*, 2023 WL 2614362, at *14.

## II.  THE ALJ DID NOT SUFFICIENTLY DEVELOP THE RECORD IN ORDER TO PROPERLY DETERMINE WHETHER PLAINTIFF'S DEPRESSION WAS SEVERE.

Plaintiff next argues that the ALJ erred, in finding that Plaintiff's depression was not severe. *See* Pl.'s Mem. Law at 13. Indeed, step two of the sequential evaluation process "requires the Commissioner to consider whether the claimant has a severe impairment." *Schafenberg v. Saul*, 858 F. App'x. 455, 456 (2d Cir. 2021) (citations and quotations omitted); *see also* 20 C.F.R. §§ 404.1520, 416.920. "A 'severe impairment' is a medically determinable impairment or

combination of impairments that 'significantly limits [the claimant's] ability to do basic work activities.'" *Peña v. O'Malley*, 23-cv-6720 (NSR) (JCM), 2024 WL 3813829, at *13 (S.D.N.Y. July 3, 2024) (quoting 20 C.F.R. §§ 404.1520(c), 416.920(c)) (alteration in original), *report and recommendation adopted*, 2024 WL 4345733 (S.D.N.Y. Sept. 30, 2024). "[T]he mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe." *Bourdier v. Saul*, 19-cv-205 (PKC), 2020 WL 705211, at *6 (E.D.N.Y. Feb. 12, 2020) (citations and quotations omitted). "The claimant bears the burden of presenting evidence establishing severity." *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. Sept. 26, 2012).

To support his argument that the ALJ erred in finding that Plaintiff's depression was not severe, Plaintiff states the following:

> In finding the impairments to be "not severe," the ALJ determined that depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities. T. 22. However, this is inaccurate. Dr. Inman-Dundon opined the Plaintiff's depression and anxiety caused mild limitation in his ability to maintain concentration, persistence and pace, but no other limitation. T. 23.

Pl.'s Mem Law at 13. While not entirely clear, it appears that Plaintiff is arguing that the ALJ erred in finding that Plaintiff's depression caused no more than a minimal limitation because Dr. Inman found that Plaintiff's depression caused a mild limitation, and that the ALJ should have adopted Dr. Inman's finding. Whether the ALJ's and Dr. Inman's findings necessarily differ from one another is unclear. However, even assuming Dr. Inman's finding regarding a mild limitation reflects a higher degree of limitation than was found by the ALJ, Plaintiff fails to explain how Dr. Inman's finding of a mild limitation would produce the conclusion that Plaintiff had a severe limitation at step two of the sequential evaluation process.

The actual issue with the ALJ's finding is that the ALJ failed to sufficiently develop the record with respect to Plaintiff's depression. *Pichardo v. Comm'r of Soc. Sec.*, 714 F. Supp. 3d 183, 196 (E.D.N.Y. 2024) (noting the Court must independently determine whether "the ALJ has met his duty to develop the record."). "Given the remedial intent of the Social Security statute and the non-adversarial nature of benefits proceedings, an ALJ has an affirmative duty, regardless of whether the claimant is represented by counsel, to develop the medical record if it is incomplete." *Cathy G. v. Kijakazi*, 21-cv-823 (ATB), 2022 WL 11134065, at *5 (N.D.N.Y. Oct. 19, 2022) (citing *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999); 20 C.F.R. §§ 404.1512 (d), 416.912(d)).

With respect to Plaintiff's depression, the administrative record contains an "obvious gap" that the ALJ did not attempt to close with a further developed record. *See Rosa*, 168 F.3d at 79 n.5; *Miranda v. Comm'r of Soc. Sec.*, 22-cv-4226 (PKC), 2023 WL 6385727, at *6 (E.D.N.Y. Sept. 29, 2023). The obvious gap stems from Plaintiff's own report that he has once seen a therapist before, and that he takes Trazodone, a prescription anti-depressant medication, for depression. *See* Tr. 75, 88, 538. Yet, the ALJ's opinion considered neither Plaintiff's reported instance of attending therapy nor his use of Trazodone; the ALJ also did not ask Plaintiff about either during the hearing. Additionally, there is nothing in the record to suggest that the ALJ re-contacted Plaintiff's providers to obtain additional information regarding Plaintiff's therapy and use of Trazodone, something the ALJ is permitted to do. *See* 20 C.F.R. §§ 404.1512(e), 416.912(e).

The ALJ should have further developed the record with respect to Plaintiff's history of therapy and use of an antidepressant before determining the severity of Plaintiff's depression. *See Cathy G.*, 2022 WL 11134065, at *7 (finding that the ALJ erred in not taking steps to complete the record regarding the plaintiff's mental health where there was "an appreciable gap in the record

regarding the plaintiff's mental health limitations.").  As such, the Court remands so that the ALJ can further develop the record with respect to these two facts before determining the severity of Plaintiff's depression.  *See Moran v. Astrue*, 569 F.3d 108, 114–15 (2d Cir. 2009) ("We vacate not because the ALJ's decision was not supported by substantial evidence but because the ALJ should have developed a more comprehensive record before making his decision.").

### III.    THE ALJ PROPERLY CONSIDERED PLAINTIFF'S USE OF A CANE.

Lastly, Plaintiff argues that the ALJ failed to properly consider Plaintiff's use of a cane in determining Plaintiff's marked restrictions for purposes of Plaintiff's RFC.  *See* Pl.'s Mem. Law at 13.  Although Plaintiff's specific arguments are difficult to discern, he seemingly contends that the ALJ failed to sufficiently consider the limitations and restrictions that Dr. Pollack identified in her opinion.  *See id.* at 13–14.  To be sure, as the ALJ recounted, Dr. Pollack identified the following limitations and restrictions:

> [A] marked restriction in bending, lifting, carrying, pushing, pulling. Moderate to marked restriction in walking, standing, climbing stairs, and kneeling. He should avoid heights, operating heavy machinery, activities which require heavy exertion, activities which may put horn at risk for fall or injury.

Tr. 27.

The ALJ evaluates a claimant's limitations using a two-step process.  *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged."  *Id.* (citing 20 C.F.R. § 404.1529(b)); *see* 20 C.F.R. § 404.1545(a), (e).  "Second, if the claimant does suffer from an impairment, the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record."  *Peña*, 2024 WL 3813829, at *11 (citing *Genier*, 606 F.3d at 49) (quotations omitted).  The ALJ considers a variety of evidence, including: the claimant's daily activities; the

location, duration, frequency, and intensity of the claimant's pain or symptoms; the treatment, medications, or other measures taken to alleviate claimant's pain or symptoms; and other factors concerning functional limitations and restrictions.  *See id.*; 20 C.F.R. §§ 404.1529, 416.929.

"After considering these factors, the ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment regarding the true extent of the pain alleged." *Peña*, 2024 WL 3813829, at *11 (citations and quotations omitted); *see Genier*, 606 F.3d at 49 (noting that ALJ need not "accept the claimant's subjective complaints without question").  An ALJ's credibility findings "are entitled to great deference and therefore can be reversed only if they are 'patently unreasonable.'" *Pietrunti v. Dir., Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997); *see Peña*, 2024 WL 3813829, at *11 ("If these findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount plaintiff's subjective complaints of pain").  Courts defer to an ALJ's credibility determination "because the ALJ had the opportunity to observe plaintiff's demeanor" during testimony.  *Peña*, 2024 WL 3813829, at *11.

Here, the ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms, his 'statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record.'"  Tr. 25.  The ALJ recounted Plaintiff's statements made during the Hearing as follows, in-part:

> The claimant testified he has considerable back and neck pain and also cannot see clearly. His knees are painful as well. He is in so much pain, he cannot sleep, even with medication. He stated he had injections, but they only helped for a short period. He needs surgery, but he is afraid to do it. He cannot stand for more than 5 minutes. He cannot sit for more than 10 minutes, then he must get up due to pain. **He uses a cane.** He needs help dressing and showering. He does not watch TV because he cannot see.

Tr. 26 (emphasis added). The ALJ reviewed and considered the medical evidence in the record, concluding that Plaintiff's statements about his symptoms were inconsistent because the "objective medical evidence [did] not illustrate symptoms and limitations so debilitating, all substantial gainful activity is precluded." *Id.*

Ultimately, the ALJ concluded that Dr. Pollack's opinion was not persuasive because Dr. Pollack had suspected that Plaintiff was exaggerating his symptoms, and the ALJ thus found that Dr. Pollack's examination was likely unreliable. *Id.* ALJs need not defer or give evidentiary weight to any particular medical opinion. *Peña*, 2024 WL 3813829, at *9; *see* 20 C.F.R. § 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.").[7] Instead, an ALJ must consider all medical opinions and determine whether they are persuasive.[8] *Peña*, 2024 WL 3813829, at *9.

Dr. Pollack's treatment notes—especially those concerning Plaintiff's use of a cane—show the very reason why the ALJ did not find Dr. Pollack's opinion persuasive. Dr. Pollack stated, as the ALJ recounted in his decision:

> [The claimant's] exam findings appeared exaggerated. They were inconsistent throughout the examination. I would see him perform certain movements, and then when asked to perform those certain movements afterwards such as turning his head, he would give very limited movements in response. He was seen numerous times walking to the exam room by other staff members less impaired than what he presented on exam today. Claimant appears to be in no acute distress. Gait with limp, which was inconsistent during the exam. Unable to walk on heels and toes. Squat declined. Stance is normal. **Using a cane prescribed to him. On the basis of this exam in the exam room, it appeared to be necessary. However, when observing him in the hallway it did not appear to be medically necessary. [He]**

---

[7] Since 2017, treating physicians are no longer given deference.

[8] An ALJ considers the following five factors in evaluating the persuasiveness of a medical opinion: "(1) supportability, (2) consistency, (3) the medical source's relationship with the claimant, (4) the medical source's specialization, and (5) any 'other factors that tend to support or contradict a medical opinion.'" *Id.* (citing 20 C.F.R. § 404.1520c(c)(1)-(5)).

26

> **needs no help changing for exam. [He] needs no help getting on and off exam table. [He was] able to rise from a chair without difficulty**.

Tr. 27 (emphasis added).

Accordingly, Plaintiff's argument that the ALJ should have adopted Dr. Pollack's findings is unavailing. Plaintiff provides no reason for the Court to discard the ALJ's finding that Dr. Pollack's opinion was not persuasive. Though Plaintiff argues that the ALJ "failed to resolve the issue on the necessity of the use of the cane in the medical opinion by re-contacting the consultative examiner," there was no obligation for the ALJ to do so. Where evidence is inconsistent, the Commissioner will consider the other relevant evidence in the record to see if they can determine the claimant's disability status based on the evidence that they *do* have. 20 C.F.R. § 404.1520b(b)(1); *see Rosa*, 168 F.3d at 79 n.5 ("where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." (citations and quotations omitted)). Such is the case here, as the ALJ was able to determine RFC based on other evidence in the record—namely, Dr. Putcha and Dr. Randall's findings. Tr. 27.

Even if the ALJ had found Dr. Pollack's opinion persuasive and adopted Dr. Pollack's findings, Dr. Pollack *did not find* that Plaintiff needed a cane to work. Tr. 356. In fact, Dr. Pollack did not even mention Plaintiff's cane in her Medical Source Statement—*i.e.*, the section of her report that set forth Plaintiff's limitations. *Id.* Importantly, neither did state agency physicians Dr. Putcha and Dr. Randall, who both noted that Plaintiff used a cane "inconsistently." Tr. 57–58, 65–66, 76–79, 89–92; JSF § I. B. 27, 29.

To the extent that Plaintiff is suggesting that his cane is medically necessary, "there must be medical documentation establishing the need for [the cane] to aid in walking or standing, and describing the circumstances for which it is needed." *Harry B. v. Comm'r of Soc. Sec.*, 20-cv-227

(ATB), 2021 WL 1198283, at *8 (N.D.N.Y. Mar. 30, 2021) (citing *Fields v. Colvin*, No. 16-cv-6312, 2018 WL 271531, at *3 (W.D.N.Y. Jan. 3, 2018)) (quotations omitted).  "The fact that at times, [a] plaintiff may have used a cane or assistive device, does not indicate that such a device was medically necessary." *Id.* at *9; *Marrero v. Comm'r of Soc. Sec.*, 20-CV-10241 (KHP), 2022 WL 335526, at *8 (S.D.N.Y. Aug. 15, 2022) (noting ALJ not obligated to consider a plaintiff's need for a cane where plaintiff admitted that she did not use one all the time).  "Moreover, an observation that [a] plaintiff used such a device, even by medical personnel[,] is not enough." *Harry B.*, 2021 WL 1198283, at *9.  The fact that Dr. Pollack, Dr. Putcha, and Dr. Randall all observed/noted Plaintiff's cane use, does not automatically render the cane medically necessary.

Plaintiff points to no other evidence regarding the cane that the ALJ should have included in his RFC analysis.  Plaintiff himself only testified to "sometimes" needing a cane to stand up.  Tr. 45.  Although Dr. Pollack mentioned in her report that Plaintiff's cane was "prescribed" to Plaintiff, he cites no other evidence in the record describing the cane as "prescribed."  Indeed, none of Dr. Rodriguez-Ospina's treatment notes discuss prescribing Plaintiff a cane.  In fact, Dr. Rodriguez-Ospina—Plaintiff's primary physician who has treated the medical conditions that Plaintiff alleges caused his disability—consistently recommended that Plaintiff walk for exercise. *E.g.*, Tr. 425 ("I have advised patient to start walking regularly"); 440–441 (same); 461 (same); 467 (same), 478 (same).  Although Plaintiff stated that he used both a cane and glasses in the Function Report, he answered only "glasses" to the question, "Which of these were prescribed by a doctor?"  Tr. 280.

Ultimately, underlying the ALJ's analysis of Plaintiff's use of a cane is a determination of Plaintiff's credibility.  This Court will not disturb that determination, "[a]s it is the responsibility of the Commissioner and not of the reviewing court to assess a claimant's credibility."  *Frias v.*

*Comm'r of Soc. Sec.*, 225 F.Supp.3d 125, 135 (E.D.N.Y. 2016) (citations omitted).  At the Hearing, the ALJ asked Plaintiff about his pain, other symptoms, and use of a cane.  Tr. 40–46.  Albeit telephonically, the ALJ observed Plaintiff's testimony—an opportunity that this Court does not have.  Though Plaintiff insists that  the ALJ should have relied on Dr. Pollack's opinion, Dr. Pollack's position that the Plaintiff's exam findings were exaggerated only supports the ALJ's determination on Plaintiff's credibility.  As substantial evidence otherwise supports the ALJ's RFC findings,[9] the ALJ sufficiently considered Plaintiff's use of a cane for purposes of the RFC analysis.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is GRANTED in-part, and Defendant's cross-motion for judgment on the pleadings is DENIED.  This action is REMANDED for further proceedings consistent with this Memorandum and Order.


**SO ORDERED.**

                                                            /s_____
                                                            Steven L. Tiscione
                                                            United States Magistrate Judge
                                                            Eastern District of New York


Dated: Central Islip, New York
         September 2, 2025

---

[9] As discussed, the ALJ's determination should have, however, accounted for Plaintiff's mental impairments in greater detail.